## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KARA DOWNS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-23-00064-PRW |
| ROBINSON HOOVER & FUDGE, PLLC, | ) ) | |
| Defendant. | ) | |

## <u>ORDER</u>

Before the Court are Defendant's Motion to Dismiss and Alternative Motion for Summary Judgment (Dkt. 8), filed by Defendant Robinson Hoover & Fudge, PLLC ("RHF"); the Response (Dkt. 9), filed by Plaintiff Kara Downs; and RHF's Reply (Dkt. 12). Having considered the pleadings and applicable legal authorities, the Court **DENIES** in part and **GRANTS** in part the Motion (Dkt. 8).

### *Facts*

According to the Complaint, at some point Downs incurred an "alleged" obligation to non-party Performance Assurance, LLC ("Performance"), which arose out of her personal transactions. (Dkt. 1 ¶¶ 21–24). Performance contracted with RHF to collect the debt. (*Id.* ¶ 25). To do so, RHF commenced a collection lawsuit in the District Court for Oklahoma County (the "State Court") against Downs (the "Collection Suit"). (*Id.*).

On July 9, 2019, a deputy clerk for the State Court issued summons. (Dkt. 1 ¶ 31). RHF subsequently filed an affidavit of service, in which the process server attested under

penalty of perjury that she attempted to serve but could not locate Downs at three different addresses.[1] The server could not find her because she because she did not reside at any of the addresses. (*Id.* ¶ 38; Dkt. 1-1). In fact, Downs has resided at her current address since before the affidavit of service (which was executed on October 31, 2019) was prepared. (Dkt. 1 ¶¶ 35, 38; Dkt. 1-1).

Subsequently the State Court, relying on the affidavit, entered a default judgment against Downs. (Dkt. 1 at 8). Sometime later, she called RHF, and "it identified her in its system using, among other things, her current address." (*Id.* ¶ 42). Downs then discovered the default judgment "by using Oklahoma public records." (*Id.* ¶ 43). On March 16, 2022, RHF sent Downs a letter at her correct address, which purportedly verified the validity of Downs's indebtedness and included post-judgment discovery requests (the "Letter"). (*Id.* ¶¶ 45–47; Dkt. 1-2).

Downs asserts that, based on the phone call and Letter, RHF "knew or should have known that she" resided at a different address, but intentionally provided its process server with the wrong addresses. (Dkt. 1 ¶¶ 37–39). She argues that RHF's "actions of filing the [Collection Suit], causing service to purportedly be attempted at incorrect addresses[,]" seeking/obtaining a default money judgment[,]" and sending the Letter all constituted "attempts to collect the subject consumer debt" (*Id.* ¶ 41). She further argues that the default judgment "is a nullity because no service was accomplished and no personal jurisdiction

---

[1] These were "547 N. Council Road, Oklahoma City, OK; 1601 Garth Brooks, Yukon, OK 73099; and 2001 NW 23rd Street, Oklahoma City 73107." Aff./Summons (Dkt. 1-1, Ex. 1), at 1.

was obtained" and that RHF acted "maliciously" through threatening action that it could not take legally, since RHF had actual or constructive knowledge of her correct address. (*Id.* ¶¶ 51–52).

On January 19, 2023, Downs sued RHF under the Fair Debt Collection Practices Act ("FDCPA")[2] for monetary damages on behalf of herself and all others similarly situated. (Dkt. 1). RHF moves to dismiss the Complaint arguing that Downs did not state a claim, either on behalf of herself or others, on which the Court may grant relief. In the alternative, it moves for summary judgment, contending that the FDCPA's one-year statute of limitations precludes any claim that she may have stated. (Dkt. 8).

### *Standard of Review*

In reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must satisfy itself that the pleaded facts state a claim that is plausible.[3] All well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[4] Additionally, the Court must "draw all reasonable inferences in favor of the non-moving party[.]"[5] While factual allegations are taken as true, a court need not accept

---

[2] Specifically, she argues that RHF violated 15 U.S.C. §§ 1692d–g. Compl. (Dkt. 1).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[4] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

[5] *Doe v. Woodard*, 912 F.3d 1278, 1285 (10th Cir. 2019) (citation omitted).

mere legal conclusions.[6] "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough to state a claim.[7]

Both the Motion (Dkt. 8) and Response (Dkt. 9) include evidence not part of the Complaint (Dkt. 1), including government documents. To the extent they are relevant here, the Court may take judicial notice of those "facts which are a matter of public record."[8] Additionally, "a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."[9]

### *Analysis*

### I.     Downs stated individual claims on which the Court may grant relief.

RHF argues that Downs has not stated a claim for relief under the FDCPA. Congress's "express purpose [in] passing the FDCPA was 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'"[10] To survive a 12(b)(6) motion to dismiss, the plaintiff "must allege sufficient facts to plausibly

---

[6] *Khalik v. United Air Lines*, 671 F.3d 1188, 1190–91 (10th Cir. 2012).

[7] *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

[8] *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

[9] *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005).

[10] *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002) (quoting 15 U.S.C. § 1692(e)).

suggest that [the defendant] is a debt collector whose efforts to collect a debt from [her] violated . . . provisions of the FDCPA."[11]

Downs alleges that RHF violated Sections 1692d, e, and f of the FDCPA, because it knowingly caused its process server in the Collection Suit to attempt to personally serve her at the wrong addresses. These sections prohibit (1) "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt";[12] (2) the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt";[13] and (3) utilization of "unfair or unconscionable means to collect or attempt to collect any debt."[14] Downs also alleges that RHF violated Section 1692g (which generally requires a debt collector to send a consumer written notice containing certain information) when it sent the Letter, which cited "only to the default judgment secured by invalid service."[15]

Downs's claims rest on a "sewer service" theory of liability, which, as the parties agree, many courts have recognized as valid under the FDCPA.[16] A debt collector engages in "sewer service" when it fails to serve a debtor and "fil[es] a fraudulent affidavit attesting

---

[11] *Mbaku v. Carrington Mortg. Servs., LLC*, 735 F. App'x 533, 536 (10th Cir. 2018) (citation omitted).

[12] 15 U.S.C. § 1692d.

[13] § 1692e.

[14] § 1692f.

[15] Compl. (Dkt. 1), at 16.

[16] *See Briscoe v. Cohen, McNeile & Pappas, P.C.*, No. 14-2146-DDC-KGG, 2014 WL 4954600, at *4 (D. Kan. Oct. 1, 2014) (surveying cases).

to service so that when the debtor later fails to appear in court, a default judgment is entered against [her]."[17] Usually, in order to "allege a 'sewer service' claim sufficiently under the FDCPA, the Complaint must allege that 'defendants made deliberately false statements in proofs of service of summons by attesting that they had served the plaintiffs when they had not.'"[18] But least one court in this Circuit has found that a plaintiff states a claim where she alleges that the debt collector deliberately instructs the process server to serve plaintiff at the incorrect address, for the sole purpose of obtaining a default judgment.[19]

RHF only attacks one factual allegation as insufficient: that RHF knew or should have known her correct address at the time that it attempted to personally serve her.[20] Specifically, RHF argues that Downs has failed to allege specific facts that plausibly establish that RHF knew or should have known of her correct address. Rather, it contends, this allegation is conclusory and based on the faulty assumption "that simply because Downs may have actually had a different address" than those where the process server attempted to personally serve her, "RHF must therefore have known that all the addresses the process server tried were wrong."[21] RHF is incorrect; the Complaint plausibly alleges that RHF knowingly directed its process server to attempt to personally serve Downs at the wrong address, for the purpose of obtaining a default judgment.

---

[17] *Id.* (citation and internal quotation marks omitted).

[18] *Bevan v. Butler & Assocs., P.A.*, No. 16-2785-DDC-KGS, 2017 WL 6557418, at *7 (D. Kan. Dec. 22, 2017) (quoting *id.*).

[19] *Id.* at *8.

[20] Def.'s Mot. to Dismiss (Dkt. 8), at 9–10.

[21] Def.'s Mot. to Dismiss (Dkt. 8), at 10.

The Complaint lays out the well-pleaded facts on which the allegations regarding RHF's knowledge rest. When Downs initially called RHF, "it identified her in its system using, among other things, her current address[,]" and RHF sent Downs the Letter to her correct address.[22] Taken together and viewed in the light most favorable to Downs, these allegations give rise to the plausible inference that RHF knew Downs' correct address. In its reply, RHF argues that although the Letter demonstrates that it knew of her correct residence address in 2022, it does not necessarily show that RHF knew it when it attempted to serve her three years prior.[23] But Downs does not specify when the call took place,[24] and even if it occurred after the service, the fact that RHF knew the correct address at that point in time gives rise to a plausible inference that it knew that address when it served Downs. Viewing the evidence in the light most favorable to and drawing all inferences in favor of Downs, the Court finds that she pleaded facts sufficient to show: (1) that RHF knew Downs' correct address when it sought to personally serve her, and (2) to plausibly infer that it did so in an effort to obtain a default judgment.[25]

RHF also argues in its Reply that the Complaint fails because Downs does not allege that RHF made a false statement to the State Court, as its affidavit truthfully informed the district court that it had not obtained personal service on Downs after attempting to do so

---

[22] Compl. (Dkt. 1), at 8.

[23] Def.'s Reply (Dkt. 12), at 5.

[24] Compl. (Dkt. 1), ¶ 42.

[25] *See Alvarado*, 493 F.3d at 1215; *Doe*, 912 F.3d at 1285.

at three separate addresses.[26] It relies on a series of cases in which courts found no FDCPA liability where a "debt collector fails to obtain personal service at a consumer's correct residence address, but then obtains a default judgment anyway."[27] But none of these cases involve a complaint that alleges that the defendant *knowingly* failed to obtain personal service at a consumer's correct residence address for the purpose of obtaining a default judgment.[28]

---

[26] Def.'s Reply (Dkt. 12), at 7; *See also* Aff./Summons (Dkt. 1-1, Ex. 1).

[27] Def.'s Reply (Dkt. 12), at 6 (collecting cases).

[28] *See Briscoe*, 2014 WL 4954600, at *5 (The plaintiff did "not allege that [the] defendant instructed the [s]herrif to serve him at the incorrect address *for the purpose* of obtaining a default judgment fraudulently[.]" (emphasis in original));

*Keylard v. Mueller Anderson, P.C.*, No. 13 C 2468, 2013 WL 4501446, at *2 (N.D. Ill. Aug. 22, 2013) (The court held that Section 1692f is not an enforcement mechanism for knowing violation of other state laws such as the Illinois Code of Civil Procedure. Whereas here, it is not obvious from the face of the complaint that Downs seeks to use the FDCPA to enforce a similar Oklahoma law.) (citing *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir.2007));

*Moore v. Fein, Such, Kahn & Shepard, P.C.*, No. CIV.A. 12-1157, 2012 WL 3945539, at *5 (D.N.J. June 13, 2012) (The plaintiff sued the defendant under the FDCPA, alleging that (1) the defendant's service of process in the underlying collection case was improper and (2) the default judgment was later vacated on this ground. The court found that "the limited case authority that does exist [ran] counter to" the plaintiff's assertions that "the institution of a levy in accordance with the execution of default judgment" because of *merely incorrect* service of process constitutes a FDCPA violation.);

*Scott v. Kelkris Assocs., Inc.*, No. CIV. 2:10-1654 WBS, 2012 WL 996578, at *6 (E.D. Cal. Mar. 23, 2012) (The defendant hired a process server who *did not tell the defendant* that it had not effectuated service properly on the plaintiff. The court denied summary judgment in part because of the lack of "evidence that [the] defendant knew that [the] plaintiff did not live at" the address where the process server attempted to serve him.);

*Mandelas v. Gordon*, 785 F. Supp. 2d 951, at 956 (W.D. Wash. 2011) (The process server filed a false declaration stating that he had served the plaintiff, the underlying collection court granted default judgment, and the plaintiff sued under Section 1692f. The court granted the defendant's motion for summary judgment, in part because it "found no

This case is more like *Bevan v. Butler & Associates*,[29] which Downs cites and RHF does not address in its reply.[30] There, the complaint alleged that the defendant instructed the sheriff to serve the plaintiff at an incorrect address.[31] The court held that if the "plaintiff can produce admissible evidence to support her allegation, it could provide a basis for a reasonable jury to find [that] defendant used 'false, deceptive, or misleading representation[s] or means in connection with the collection of [a] debt.'"[32] Here, the Complaint states sufficient facts to plausibly establish that RHF violated the FDCPA by knowingly causing its process server to serve Downs at the wrong address.

## II.    The Court declines to convert the Motion into a motion for summary judgment.

RHF raises a statute of limitations defense that necessitates consideration of evidence (which Downs argues is inadmissible) and matters beyond the pleadings. (*See*

---

authority supporting [the plaintiff's] contention that pursuing a collection action based on a facially correct but factually ineffective return of service is unfair or unconscionable conduct under the FDCPA." The plaintiff's *only* evidence that the defendant's conduct was knowing was its awareness that the process server "had, on occasion, improperly served debtors in the past.");

*Dillon v. Riffel-Kuhlmann*, 574 F. Supp. 2d 1221, 1223 (D. Kan. 2008) (finding "no support for the proposition that pursuing a collection action without serving the debtor constitutes a violation of the FDCPA" where "the record clearly show[ed] that" the process server *in fact* personally served the plaintiff.);

*Pierce v. Steven T. Rosso, P.A.*, No. CIV. 01-1244 DSDJMM, 2001 WL 34624006, at *2. (D. Minn. Dec. 21, 2001) (Where the plaintiff alleged no false, deceptive, misleading, or illegal acts on the defendants' part other than their failure to strictly comply with the Minnesota Rules of Civil Procedure. (emphasis added)).

[29] 2017 WL 6557418.

[30] *See* Pl.'s Resp. (Dkt. 9), at 10–11.

[31] 2017 WL 6557418, at *8.

[32] *Id.* (quoting 15 U.S.C. § 1692e).

Dkt. 9 at 21). The evidence relates to RHF's garnishment proceedings against Downs' former employer in November of 2020. Consideration of materials outside of the pleadings sometimes requires converting a motion to dismiss to a motion for summary judgment.[33] Because the parties have conducted no discovery, the Court finds summary judgment to be premature. It therefore declines to consider the disputed extraneous material and to convert the Motion into a motion for summary judgment.[34] Accordingly, the Court **DENIES** the Motion to the extent that it seeks dismissal based on the statute of limitations **without prejudice** to RHF's right to refile at an appropriate time.

## III.    Because the class definition is overbroad, the class action claim is dismissed.

Finally, RHF argues that the Complaint's class allegations are insufficient and consist of "mere repetition" of Federal Rule of Civil Procedure 23's requirements for class actions.[35] A class action is an exception, not the rule, to the typical structure of lawsuits with individual parties.[36] To implicate this exception, "a party seeking to maintain a class action must affirmatively demonstrate [her] compliance with Rule 23."[37] A plaintiff ultimately bears the burden of showing that the Rule 23(a) requirements—numerosity,

---

[33] Fed. R. Civ. P. 12(d).

[34] *See Phillips v. Brittian*, No. CV-18-649-R, 2019 WL 177951, at *2 (W.D. Okla. Jan. 11, 2019) (collecting cases).

[35] Def.'s Mot. to Dismiss (Dkt. 8), at 7.

[36] *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).

[37] *Id.* at 350 ("Rule 23 does not set forth a mere pleading standard." The plaintiff "must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.").

commonality, typicality, and adequate representation[38]—are met. Additionally, "'[t]he party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).'"[39] "[T]he district court has an independent obligation to conduct a 'rigorous analysis'"[40] at an "early practicable time after a person sues . . . as a class representative" before determining whether to certify the action as a class action.[41]

The Tenth Circuit has yet to articulate a standard for evaluating a preemptive motion to deny class certification,[42] but it has provided that courts should not "blindly rely on conclusory allegations which parrot Rule 23 requirements and may consider the legal and factual issues presented by [the] plaintiff's complaints."[43] Courts are split as to whether the Rule 12(b)(6) standard as articulated in *Twombly* and *Iqbal* may be used to dismiss class

---

[38] Specifically,

> [r]ule 23(a) requires the party seeking certification to demonstrate that: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there is a question of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy)."

*Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013).

[39] *Id.* (internal quotation marks and citation omitted).

[40] *Id.* (citation omitted).

[41] Fed. R. Civ. P. 23(c)(1)(A).

[42] *Hockenbury v. Hanover Ins. Co.*, No. CV-15-1003-D, 2016 WL 552967, at *3 (W.D. Okla. Feb. 10, 2016) (quoting *Wornicki v. Brokerpriceopinion.com, Inc.*, No. 13-CV-03258-PAB-KMT, 2015 WL 1403814, at *4 (D. Colo. Mar. 23, 2015)).

[43] *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, at 1290 n.7 (10th Cir. 1999) (cleaned up and quotation omitted).

action allegations in a complaint,[44] but courts in this circuit generally view motions to dismiss "class actions at the pleading stage with particular disfavor," since they "generally consider such motions an extreme remedy in that they seek to preemptively terminate the class aspects solely on the basis of what is alleged in the complaint, and before the plaintiff has had any meaningful chance to conduct discovery."[45] Courts are also split as to who bears the burden of proof on such a motion.[46]

Regardless of the class factual allegations and the applicability of *Twombly* and *Iqbal* to such allegations, the Court finds that Downs' current class definition is overbroad. Downs defines the class as consisting of:

a.    all individuals with addresses in Oklahoma;

b.    against whom Robinson filed at least one collection lawsuit attempting to collect a consumer debt;

c.    a collection lawsuit for which an affidavit of service was filed attesting that the individual was not served *because the individual was not found*;

d.    which collection lawsuit resulted in a default judgment that was ultimately disclosed in response to the individuals' dispute of debt collection pursuant to 15 U.S.C. § 1692g;

e.    which dispute/validation response was issued on or after a date one year prior to the filing of this action and on or before a date twenty-one days after the filing of this action.[47]

---

[44] *Hockenbury*, 2016 WL 552967 at *1 n.1 (collecting cases).

[45] *Id.* at *3 (collecting cases).

[46] *Id.* (collecting cases).

[47] Compl. (Dkt. 1), ¶ 12 (emphasis added).

As RHF rightly argues,[48] this definition includes individuals against whom RHF would have done no legal wrong whatsoever, as it includes those who RHF did not find for any number of reasons, not just cases in which it knowingly sent a process server to the wrong address as Downs alleges happens to her. Such a definition brings problems with ascertaining class membership, which "militate against a finding that class treatment is appropriate at this time."[49] That said, the Court finds that plaintiff could possibly cure such a deficiency in an amended complaint.

Although RHF argues that the Complaint is also factually insufficient to proceed as a class action, the Court finds that addressing such deficiencies before Downs has defined an appropriate class is impractical.[50] Accordingly, the Court **GRANTS** the Motion as to the class allegations, but Downs may file an amended complaint on or before October 21, 2024.

### Conclusion

For the reasons given above, the Court **GRANTS** in part and **DENIES** in part the Motion (Dkt. 8). It **DENIES** the Motion with regards to Plaintiff's individual claims **without prejudice** to RHF's right to reassert its statute of limitation arguments in a motion for summary judgment, and it **GRANTS** the Motion with regards to Plaintiff's class action

---

[48] Def.'s Mot. to Dismiss (Dkt. 8), at 8. Downs does not address this argument and instead focuses solely on the applicability of *Twombly* and *Iqbal* to class actions. *See* Pl.'s Resp. (Dkt. 9), at 13–17.

[49] *Hockenbury*, 2016 WL 552967, at *4.

[50] *See id.*

claim **without prejudice** to her right to file an amended complaint on or before October 21, 2024.

      **IT IS SO ORDERED** this 30th day of September 2024.

                    _____

                    PATRICK R. WYRICK
                    UNITED STATES DISTRICT JUDGE